# BILLS *v.* KINSON.

The action of replevin cannot be maintained against a pound-keeper so long as he retains the creatures impounded within the custody of the law; but when he voluntarily parts with his legal control over them he cannot retake them, and replevin will lie against him.

If a pound-keeper drive from the pound to his barn or pasture creatures which have been legally impounded, for the purpose of more conveniently furnishing them with food and drink, he thereby loses his legal control over them.

Several creatures were impounded by R. in the public pound of A. K., the pound-keeper, on account of his own convenience, drove them from said pound

Bills *v.* Kinson.

to his pasture to feed, and also into his barn. While in the barn, B., the owner, took them and drove them into his own inclosure. R. and K. retook them from B.'s inclosure, and drove them to K.'s barn again to feed, and then inclosed them in the pound. *Held*, that K., by driving the creatures from the pound to his pasture and barn, lost his legal custody over them ; that his subsequent acts were without authority of law, and that B. could maintain replevin against him.

REPLEVIN for four cows, one two-years old heifer, and one yearling bull. The plea was the general issue, accompanied by a brief statement, setting forth that the defendant was pound-keeper of Amherst in this county, and at the time the writ of replevin was served, the said creatures were legally detained by him as such pound-keeper. The writ was dated September 30th, 1848, and was served on the same day.

It appeared in evidence, that during the whole month of September, 1848, the defendant was pound-keeper of the town of Amherst, having been duly elected and qualified ; that on the 25th of September, 1848, the four cows and the yearling bull were impounded by one Alfred Randall in the public pound of Amherst, and a notice was left by him with the defendant according to the requisitions of the statute.

On the 28th of September, 1848, the heifer mentioned in said writ was impounded by said Randall in the public pound, and due notice left by him with the defendant.

The creatures remained in said public pound under the charge of the defendant as such pound-keeper until the following day, September 29th, when the defendant, — his barn being near to his dwelling house, and also near to the pound, — for the purpose of more conveniently furnishing suitable food and drink for the creatures, drove them to his, the defendant's barn, and inclosed them in the same, having previously on the same day driven the creatures to a pasture near his, the defendant's house, and left them at large in the pasture to feed.

It appeared further, that the creatures having been driven by the defendant from the pasture to his barn were taken therefrom without the consent of the defendant, and put into the plaintiff's pasture ; and on the same day, to wit, the 29th day of September, Randall and the defendant retook the creatures from the

pasture, and the defendant again took custody of them, and again drove them to his barn for the purpose of more conveniently furnishing them suitable food and drink; and on the same day, before night, inclosed them bodily in the public pound.

A verdict was taken by consent for the plaintiff, on which judgment was to be entered, or the verdict set aside and judgment entered for the defendant, as the opinion of this Court should be upon the facts presented.

*Atherton & Sawyer*, for the defendant.

The record shows that the writ is dated September 30th, 1848. The service was on the same day.

I. No action can be sustained by the plaintiff.

1. Because the acts of the defendant were not illegal. Rev. Stat. p. 258, § 18; *Adams* v. *Adams*, 13 Pick. 384; Rev. Stat. p. 256, § 2.

2. Because if the defendant's acts as pound-keeper were not strictly in consonance with his duty as such, they were not such as the plaintiff can complain of, and not such as entitle the plaintiff to damages. Rev. Stat. p. 257, § 4; Ib. p. 258, § 16; Ib. § 15; 17 Pick. 415.

II. Even if the defendant has been guilty of negligence as pound-keeper, or conducted illegally, so as to be liable for damages in some form of action, *replevin cannot be maintained.*

Because replevin cannot be maintained, except by statute, for goods in custody of the law, and the goods were in the custody of the law.

The statute gives replevin against the person impounding, and not against the pound-keeper. *Smith* v. *Huntington*, 3 N. H. Rep. 78; Rev. Stat. p. 411, § 1; *Commonwealth* v. *Beale*, 5 Pick. 514; Rev. Stat. 258, § 16; *Brandley* v. *Kent*, 1 D. & East, 60; *Bodkin* v. *Powell*, Cowper's Rep. 476; *Jackson* v. *Hampton*, 6 Iredell, 34; U. S. Annual Dig. 1847, vol. 1, p. 222; *Brewer* v. *Holden*, 21 Pick. 376; Dane's Ab. ch. 209, art. 5, vol. 7, p. 78; Ib. ch. 136, art. 16, § 2, vol. 5, p. 33; Ib. ch. 2, art. 6, § 14, p. 138, vol. 1.

The person impounding retook the cattle within six days, as

he had a right to. It was the duty of the pound-keeper to receive them into custody. Rev. Stat. p. 258, § 16 ; *Bodkin v. Powell*, Cowp. 476. See also Salk. Rep. 247 ; Coke upon Litt. 47, B.; 3 Com. Dig. 559, Distress, D. 1 ; Ib. 562, Distress, D. 6 ; 2 Inst. 131; 3 Lov. Rep. 48 ; Coke upon Litt. 1606 ; 3 Com. Dig. Distress, D.

*Sawyer & Stevens*, for the plaintiff.

EASTMAN, J. From the facts, as stated in this case, it appears that the creatures impounded were the property of the plaintiff. Being found, *damage feasant*, upon the premises of Randall, they were driven by him to the public pound in Amherst, and there impounded. An estimate of the damage done and of the fees and charges incurred was left with the defendant, who was pound-keeper of Amherst for that year, according to the provisions of § 3, ch. 137 of the Rev. Stat. The defendant, then, had at that time the legal control of the creatures, and an action of replevin could not be maintained against him while such legal control remained unimpaired, nor unless he in some way lost that control, and rendered himself liable by a departure from his official duties. The action of replevin cannot be sustained against a pound-keeper while the creatures are within his legal custody. It does not lie against him at common law. Co. Litt. 47, B.; Ib. 145, B.; 1 Chit. Plead. 159 ; Ham. 376 ; *Pritchard* v. *Stevens*, 6 Durn. & East, 522 ; *Ilsley* v. *Stubbs*, 5 Mass. 283 ; *Smith* v. *Huntington*, 3 N. H. Rep. 76. Nor is it given by statute. Rev. Stat. ch. 204, § 1. Against the person impounding, however, it may be brought at any time while the creatures remain in the pound. Rev. Stat. ch. 204, § 1. Our statutes have added to the causes for which this action may be instituted at common law ; but they do not extend to the case of a pound-keeper. Rev. Stat. ch. 204, § 2, 3. It seems to have been the intention of the legislature to prevent a pound-keeper from being vexed with lawsuits for the irregularities which often happen of the person impounding ; in the like manner as a collector of taxes, with a warrant fair and legal upon its face, and acting

within the scope of his legal duties, is protected from suits based upon informal or illegal proceedings of towns and selectmen.

But notwithstanding a pound-keeper when acting within the sphere of his official powers, and while keeping the property within the custody of the law, is not liable to this action, neither at common law nor by statute, still he is not exempt from its operation when going beyond the powers which the law has granted him. He holds the property put into his custody, only by virtue of his official character, and when transcending the duties or rights of that character his legal protection ceases.

Towns are required, under a fixed penalty, to build and maintain good and sufficient pounds for impounding and restraining all creatures liable to be impounded. Rev. Stat. ch. 137, § 14. Such creatures must be impounded in the public pound, if there is any in the town, otherwise they may be impounded by the party taking up such creatures, in his own barn or inclosure. Rev. Stat. ch. 137, § 2. And the particular course to be pursued, both by the pound-keeper and the person impounding, is set forth in our statutes with considerable minuteness. It is not necessary, however, to state all the details here. Fees are to be paid to the pound-keeper for food and drink. The amount varies according to the kind and number of the creatures. Rev. Stat. ch. 137, §§ 18, 19. Notice is to be given to the owner of the creatures, if known, and if not known it is to be posted up in some public place in the town, and in two adjoining towns. This notice is required to contain a description of the creatures impounded, an estimate of the damage done, the amount of the fees and charges, and the place of impounding. Rev. Stat. ch. 137, § 4.

It will be perceived, that two places only are recognized by the statute as legal pounds : the public pound built by the inhabitants of the town, and, in case of no public pound, the barn or inclosure of the individual impounding. Any other impounding, therefore, would be a trespass. It will be observed, also, that the notice must state the place where the creatures are impounded. This is material as communicating to the owner where he may find his property. There is an object in having the

Bills *v.* Kinson.

creatures detained in a pound where they can be seen, that the alleged owner may view them, and if his, pay the pound charges, damages, and costs, and take them away. If the creatures may be detained in other places than those pointed out by statute, whenever the convenience of the pound-keeper may require it, then there are no limits, that we can discover, by which he is to be fixed, and no certainty that the owner will find his creatures at the pound in going to view them there. If it should be indispensable for the preservation of the animals to have them removed from the pound, perhaps it might be done. Of that we give no opinion; but to hold that the convenience of the pound-keeper shall settle the matter would be virtually abrogating the statute.

In this case, the creatures appear to have been properly impounded by Randall. No exception is taken to the primary proceedings. It is the course subsequently pursued by the defendant that renders him liable. On the 29th of September, the day of the impounding, it appears that he drove the creatures from the pound into his pasture, to feed; and also on the same day put them into his barn for the purpose of more conveniently furnishing them with food and drink. It is true that the case finds that both the pasture and barn were near the pound, but it is also true that they were in no way connected with the pound. And if the pound-keeper could drive them into one pasture, or put them into one barn, for his convenience, there is no legal reason why he might not into another, and at a remote distance. Both acts were illegal and beyond his authority, and by them he lost all control over the creatures, and all protection from the law. Besides, the clause of the statute providing for compensation to the pound-keeper, for food and drink furnished the creatures, contemplates that it shall be given them in the pound. In most towns in the State, the sum allowed would be quite large for pasturage merely. Nor is it a sufficient answer to this action to say, that the plaintiff has not been damaged by the course taken. The action is not brought to recover for damages done to the creatures, but to obtain the creatures themselves; which are the property of the plaintiff, and which the defendant is seeking to hold. This the defendant endeavors to do, not by virtue

of any purchase or contract, but by virtue of a law the provisions of which he has not pursued; and, as a consequence, he has no authority over the property. It matters not whether the animals have been ill or well treated, so far as the legal rights to the possession of the property are concerned. Neither was there any rescue or pound breach by the plaintiff; for the creatures were taken by him, not from the pound, but from the defendant's private inclosure, after he had voluntarily lost his legal control over them and had no right to their custody. The plaintiff was their owner, and had not parted with his right to them in any way, nor were they held by virtue of any law. He had, therefore, a perfect right to take them as he did. The case is somewhat analogous to that of a voluntary escape by an officer, on final process. All subsequent arrests by virtue of the same process, after such an escape, are illegal, and render the officer a trespasser.

While the creatures were in the defendant's barn, they were not in the custody of the law. The defendant had parted with their custody in removing them from their legal place of confinement. The plaintiff had, then, the right to take and drive them to his own inclosure, and the defendant had no power to retake them. All his acts subsequent to driving them from the pound, were illegal, and replevin can be maintained against them. The creatures from that time forth were not within the custody of the law, and his detention of them was wrongful. There must, therefore, be

*Judgment on the verdict.*